UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHELLE ELAINE BAKER                                   CIVIL ACTION

VERSUS                                                  NO. 14-2110

CAROLYN W. COLVIN, ACTING                               SECTION "B" (2)
COMMISSIONER OF SOCIAL SECURITY

## FINDINGS AND RECOMMENDATION

Plaintiff, Michelle Elaine Baker, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. § 423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I. PROCEDURAL HISTORY

Baker filed her application for DIB on August 29, 2011, alleging disability beginning February 21, 2010, due to diabetes, high blood pressure, hypothyroidism, sleep apnea, asthma, abnormal heart beat, depression and arthritis in her elbow and knees. (Tr. 214-15, 244-45, 248). After her claims were denied at the agency level, she requested a hearing before an Administrative Law Judge (ALJ), which was held on September 20, 2012. (Tr. 55-82). The ALJ issued a decision denying the application on November 7, 2012. (Tr. 96-116). Upon review, the Appeals Council remanded the case to the ALJ

for additional consideration on December 12, 2013.  (Tr. 117-20).  The ALJ held a

second hearing on March 13, 2014 (Tr. 29-54), and again denied Baker's application on

March 28, 2014.  (Tr. 9-28).  After the Appeals Council denied review on July 16, 2014,

the ALJ's decision became the Commissioner's final decision for purposes of this court's

review.  (Tr. 1-5).

Plaintiff filed a timely memorandum in support of her appeal.  Record Doc.

No. 21.  Defendant filed a timely reply memorandum.  Record Doc. No. 22.

II.    STATEMENT OF ISSUE ON APPEAL

Plaintiff contends that the ALJ made the following error:

A.    The ALJ violated 20 C.F.R. § 404.1527 and SSR 96-8p by failing to
      include in Baker's residual functional capacity all of her limitations from
      her treating psychiatrist and other accepted medical opinions and by not
      adequately explaining the ALJ's reasons for rejecting such limitations.

III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

1.    Plaintiff meets the insured status requirements of the Act through
      December 31, 2015.

2.    She has not engaged in substantial activity since February 21, 2010, the
      alleged onset date.

3.    Baker has severe impairments consisting of degenerative disc disease of the
      lumbar spine, status-post arthroscopic surgery of the left knee for
      degenerative joint disease, obesity, asthma, insulin-dependent diabetes,
      bipolar disorder and panic disorder.

4.    Plaintiff has the residual functional capacity to perform light work except
      that she can never climb ladders, ropes, scaffolds, ramps or stairs; can

2

stoop, kneel, crouch and crawl occasionally; must avoid concentrated exposure to dust/fumes/noxious gases; and is capable of simple, routine work with no public interactions and no production-type quotas.

5.     Her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

6.     She cannot perform her past relevant work as a customer service representative, cashier and call center operator.

7.     Baker was 31 years old on the alleged disability onset date and has at least a high school education.

8.     Considering her age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform, including office clerk, surveillance monitor and office machine operator.

9.     Plaintiff has not been under a disability from February 21, 2010, through the date of the ALJ's decision.

(Tr. 14-16, 18, 21-22).

IV.     <u>ANALYSIS</u>

A.     <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Richard ex rel. Z.N.F. v. Astrue</u>, 480 F. App'x 773, 776 (5th Cir. 2012) (citing <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir.

2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).   Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are

supported by substantial evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] Id. §§ 404.1520, 416.920;

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

---

residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

B.     Factual Background

Baker testified at the first hearing on September 20, 2012, that she was 33 years old and lived in a mobile home in Destrehan, Louisiana, with her fiancé and his mother. She stated that she graduated from high school and had no vocational training.  She said she had worked as a customer service representative for ten years until February 26, 2010. (Tr. 58-59).  She testified that she stopped working "because of my disability," but admitted that she had accepted unemployment compensation and was available and looking for work while she received those benefits until July or August 2011.  She stated that she had also worked as a cashier within the last 15 years.  (Tr. 59).

Baker said she cannot work because she has insulin-dependent diabetes, which causes neuropathy[2] in her hands, feet and legs that makes it difficult to stand or sit for long periods.  She stated that her hands get numb at times and she drops things.  She testified that she has difficulty concentrating and "a lot of mental issues," including "panic disorders and various of different things."  (Tr. 60).

---

[2]Neuropathy is "1. A classical term for any disorder affecting any segment of the nervous system. 2. In contemporary usage, a disease involving the cranial nerves or the peripheral or autonomic nervous system."  Stedmans Medical Dictionary, on Westlaw at STEDMANS 601870.  "Peripheral neuropathy is dysfunction of one or more peripheral nerves (the part of a nerve distal to the root and plexus).  It includes numerous syndromes characterized by varying degrees of sensory disturbances, pain, muscle weakness and atrophy, diminished deep tendon reflexes, and vasomotor symptoms, alone or in any combination." The Merck Manual (revised Mar. 2014), http://www.merckmanuals.com/professional/neurologic-disorders/peripheral-nervous-system-and-motor-unit-disorders/peripheral-neuropathy (visited July 31, 2015).

Plaintiff stated that Dr. Monica Vial had conducted a nerve conduction study to check the extent of her neuropathy.  The ALJ and plaintiff's attorney identified the study as pages 4-5 of Exhibit 4F [Tr. 392-93], but they agreed that the record contains no explanation of or conclusion about the raw test data.  (Tr. 60-61).  Plaintiff's attorney pointed out that Baker takes Neurontin,[3] which he said is used to treat neuropathy in diabetic patients.  The ALJ observed that the exhibit contains a handwritten note of "left CTS, which is carpal tunnel" syndrome.  Plaintiff testified that she is right-handed.

Baker said she was currently seeking treatment for her mental problems and was waiting for an appointment with a psychiatrist at River Parishes Mental Health Center. She stated that she had spoken with two counselors there, who diagnosed her with bipolar, panic and depression disorders.  She explained that she had not previously sought psychiatric treatment because her other doctors were treating her with medications for depression and anxiety.  She said the treatment had not worked, so her doctor had recently referred her to a psychiatrist.  (Tr. 61).  She testified that she has had depression all her life and started taking Paxil at age 18 and Prozac at age 20.

Regarding her panic disorder, plaintiff said she sometimes feels like there is a pillow over her face and she cannot breathe and feels shaky.  She stated that she gets nervous and at times cannot go into public places.  She said she will be at Wal-Mart, for

---

[3]Neurontin (generic name: gabapentin) is used to help relieve certain types of nerve pain. PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/neurontin (visited July 30, 2015).

example, and something will set off a panic attack, which is why her doctor referred her to a specialist. She testified that her anxiety and nervous attacks are sometimes so bad that she has to leave a place. She said she takes citalopram[4] for depression, which was prescribed by Dr. Vial-Benson originally and continued by her current primary care physician, Dr. Pedro Romaguera. (Tr. 62-63). She testified that her only mental health counseling occurred one month earlier.

Baker said she has high blood pressure, sleep apnea and asthma. She stated that she had a sleep study more than ten years ago, when she was seeing Dr. Prasad, and she told him that she was gasping for air while sleeping. She is still using the C-PAP machine that was prescribed for her. (Tr. 63-64). She testified that she uses a ProAir inhaler and takes Xopenex and Singulair for asthma.

Plaintiff stated that she sees an orthopedist at LSU for back pain. She said that the doctor told her that an x-ray showed something wrong with her back. She stated that the doctor referred her to physical therapy for two weeks, after which she is to return to see him. (Tr. 64).

Baker testified that she stays in bed most of the time and cannot stand for more than five minutes because her back hurts. She said she has balance issues and has a hard time standing up without either leaning on something or falling. She stated that her

---

[4]Celexa (generic name: citalopram) is a selective serotonin reuptake inhibitor used to treat depression. Id., http://www.pdrhealth.com/drugs/celexa (visited July 30, 2015).

fiancé does the shopping, cooking and cleaning, and that she stays in bed while he is at work.  She testified that she usually does not go to the grocery store or anywhere else because she has burning pain in her back and her feet and hands tingle when she tries to walk.  She said she no longer plays with her children or goes to church.

Plaintiff stated that her ten-year-old son lives with her and that her fiancé's two children come to visit every other weekend.  (Tr. 65-66).  She testified that her son can get ready for school by himself.  She said she helps him with his homework when she can and that her fiancé and his mother help her take care of her child.  She stated that she cannot ride bikes or lift anything like she used to do.  She said she is very irritable at times and wants to scream when she has a panic attack and has to tell her son not to bring her things to look at during those times.  She reiterated that she stays in bed most of the day, watching television or just sitting in the quiet.  (Tr. 66-67).  She testified that she cannot sew because she cannot feel her hands half the time and her hands sometimes tingle.  She said she reads occasionally, but loses her concentration and interest.  She stated that she was diagnosed with diabetes more than ten years ago and that she worked after that, but that her symptoms have gotten worse.  She testified that she follows a diabetic diet, checks her blood sugar six to eight times a day and keeps a log of her blood sugar levels.  (Tr. 67).

Baker testified that she has not driven in six to eight months because of her anxiety and panic attacks and that her driver's license expired in January 2012.  She said her fiancé drove her to the hearing.

Plaintiff stated that her medications cause side effects of sleepiness, drowsiness, occasional nausea, dry mouth, loss of concentration, a "foggy" feeling and dizziness. She said she sometimes cannot balance while walking and has to lean against a wall.  (Tr. 68).  She testified that she can walk for one-half block and then has to take a break because of shortness of breath, back pain and a feeling of pins and needles in her feet. She stated that she can stand for five minutes before she has to sit down, sit for 20 minutes and lift less than ten pounds.

Baker said she was fired from her last job because of her attendance record and disability.  She testified that she had to take frequent breaks due to her diabetes and neuropathy, had crying spells, missed a lot of work days and could not "pass the test," so her employer terminated her employment.  She stated that this happened with both her jobs in the last eight to nine years of work.  (Tr. 69-70).  She said she was at her last job for one year and had previously worked at Coca Cola for five years.[5]  Plaintiff stated that her diabetes, numbness and tingling worsened while she was at Coca Cola, so she missed a lot of work because of doctors' appointments and Coca Cola let her go.  She said she

---

[5]Baker told her doctors that she was fired by Coca Cola when she ran out of Family Medical Leave Act time and was fired by American Fidelity because she failed the licensing test to become a broker.  (Tr. 624, 636).

lived in Oklahoma City and was treated by Dr. Prasad at that time, and moved to Louisiana in 2010.

Baker stated that she applied for DIB in August after she had tried to find a job. (Tr. 70).  She said she told prospective employers during job interviews that she would need to take days off frequently because of doctors' appointments or her illnesses.  She testified that employers declined to hire her because they needed someone to work full time and be at the job every day.  (Tr. 70-71).  She said she applied for DIB after she stopped receiving unemployment benefits and realized that she could not perform any jobs because she cannot feel with her fingertips or walk or sit for long periods of time. Plaintiff testified that she is trying to get healthy and wants to receive DIB so she can take better care of herself and afford expensive medications.  She said that, because she has so much nerve damage, she is unsure whether she will ever have feeling in her fingertips again or be able to walk for long, but she would go back to work if she could. (Tr. 71).

Baker stated that she tries to exercise, but cannot because of pain in her back and neuropathy.  She said she does not have access to a swimming pool for exercise.  She stated that she tries to diet and walk, but is short of breath after one-half block.  She testified that she cannot exercise by walking for one-half block multiple times per day because of back pain.  (Tr. 72).  She stated that her doctor said that her x-rays show some

inflammation in her back and possibly a tiny crack in her spine and that he recommended two weeks of physical therapy.  She said she is waiting for an appointment.  (Tr. 72-73).

Plaintiff testified at the second hearing on March 13, 2014, that she and her 11-year-old son have been staying with a friend for two months.  (Tr. 32).  She said she had graduated from high school and had no vocational training.  She stated that she last worked in March 2010 as a customer service representative, had done that kind of work since she was 16 years old and had also worked as a cashier.  She said she received unemployment compensation from 2010 through 2011, looked for jobs while she was receiving it, but was unable to find work because of problems with concentration, memory and anxiety, and inability to bend or lift due to her back and knees.  (Tr. 33).

Baker stated that she cannot sit or walk for long periods of time or lift more than ten pounds.  She said she had surgery on her left knee in November 2013, was still in physical therapy and has difficulty climbing stairs.  She testified that she has bipolar disorder and cannot concentrate, remember well or get along with others.  She said she has severe anxiety and depression.  She stated that her anxiety symptoms include shakiness and a racing heartbeat.  She said she recently went twice to the emergency room at Ochsner Hospital in Kenner, Louisiana, because of numbness in her entire body and tingling due to anxiety.  (Tr. 34-35).

Plaintiff testified that she sees Dr. Devenport at River Parishes Mental Health Clinic, but he recently had surgery and has not been available for the past month.  She

said she sees counselors and a nurse named Angelle every two months.  She stated that she takes lithium and Cymbalta for her bipolar disorder, hearing noises and seeing things.  She testified that she has taken other medications in the past, but the side effects were too severe, causing her to sleep all day and night, and making her symptoms worse.

Baker said that, on a typical day, she wakes up, checks her blood sugar and eats breakfast.  She stated that she has some better days, but has more days that are worse, when all she does is lie on the couch and watch television.  She testified that she has a hard time sleeping six out of seven nights, so she tries to catch up on her rest during the day, but still has a hard time sleeping.  (Tr. 35-36).  She said she has crying spells for no reason.  She stated that she can sometimes do light dusting and vacuuming, but that the woman with whom she lives does all the cooking, laundry and shopping and most of the cleaning, with help from plaintiff's son.

Baker testified that she does not go out much because she has panic and anxiety attacks when she does anything.  She said she prefers to stay in her room.  She stated that she has not gone to church in 18 months, she does not drive and her driver's license has expired.  (Tr. 36-37).  She said that a friend brought her to the hearing.  Plaintiff said she can walk for one block, stand for ten minutes, sit for 20 minutes and lift no more than ten pounds because she has back pain.  She stated that she has problems getting along with other people and following instructions.  (Tr. 37-38).

The ALJ noted that there were very few medical records from Dr. Devenport after his February 2013 functional assessment, except for a note in April 2014 that Baker was doing very well.  Plaintiff's attorney stated that he had sought an updated medical source statement from Dr. Devenport, but the doctor was unavailable because of his surgery.

Baker testified that, two months earlier, she was kicked out of the place she had been living for a couple of years and has been staying with three to four different friends since then.  (Tr. 38).  She said her former boyfriend's mother had kicked her out, but still allowed her to use the mother's address as a mailing address.  She stated that her living situation and mental health problems have been very hard on her son, his grades have declined and he no longer makes any effort to be involved in things.

Plaintiff said she is treated for diabetes by Dr. Romaguera.  She recalled being sent to Dr. Mancuso by the Commissioner and stated that she had been truthful during that examination.  She testified that she wants DIB so she can have a stable living situation, afford her medications, get better and go back to work so she does not have to depend on other people.  She said she borrows money from friends to pay the co-payments for her prescriptions and needles for insulin.  (Tr. 40).

Baker testified that she was laid off from her last job because of her attendance record.  She said she could not work on some days when her blood sugar was high and she felt like her body had been hit by a train, or when she was depressed or angry and could not be friendly to customers.  She stated that she filed for DIB when she was

15

unable to find a job that would allow her to take time off for doctors' appointments. When the ALJ pointed out that she did not start mental health treatment until 2012, she testified that she had started treatment in Oklahoma, but she was "rebellious" and "didn't want to believe that I was bipolar and had other health issues."  (Tr. 41).

C.    Vocational Expert Testimony

A vocational expert, Karen Harrison, testified at the second hearing that plaintiff's former work as a customer service representative was semi-skilled and sedentary, while the cashier's job was semi-skilled and light.  (Tr. 47-48).  The ALJ posed a hypothetical of a person with the same age, education and vocational history as Baker, who can do light work with no climbing and occasional kneeling, stooping, crouching and crawling; must avoid concentrated exposure to dust, fumes and noxious gases; and can do simple, routine work with no public interaction or production-type quotas.  Harrison testified that such a person could not perform plaintiff's past relevant work, but could perform light, unskilled jobs that are available nationally, such as office clerk, surveillance monitor and office machine operator.  (Tr. 48-49).

The ALJ modified the hypothetical to reduce the exertional level to sedentary. The vocational expert testified that such a person could perform the jobs of office clerk, surveillance monitor and inspector/tester.  (Tr. 49).

Upon questioning by plaintiff's attorney, Harrison said that a person who would be off task 25 percent of the time would not be able to perform any available work.  She

testified that a person who missed four days of work per month due to mental disabilities would not be able to maintain full-time employment.  (Tr. 50).

D.      Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 16-20).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.      Plaintiff's Appeal

1.      The ALJ applied the appropriate legal standards and adequately explained the weight given to the medical source opinions.

The ALJ determined at step four of the sequential evaluation that Baker is capable of light work with the limitations stated in the decision.  The ALJ held at step five that plaintiff is not disabled because her residual functional capacity enables her to perform jobs that are available in the national economy.  Baker argues that the ALJ violated 20 C.F.R. § 404.1527 and Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996), by failing to include in her residual functional capacity assessment all of Baker's psychological limitations from the opinions of her treating psychiatrist, Denis Devenport, M.D., and by failing to include mental limitations from other medical opinions that the ALJ accepted.  Plaintiff contends that the ALJ did not adequately explain her reasons for rejecting those other psychological limitations.

Section 404.1527 of the regulations requires the ALJ to evaluate and assign weight to every medical source opinion. Social Security Ruling 96-8p requires the ALJ to consider and address medical source opinions in assessing residual functional capacity and to explain why any medical source opinion that conflicts with the ALJ's assessment was not adopted. The ALJ in the instant case complied with these mandates.

As to Baker's mental conditions, the ALJ found that plaintiff's bipolar disorder and panic disorder are severe impairments, but that she is capable of performing simple, routine work with no public interactions and no production-type quotas. Baker's treating psychiatrist, Dr. Devenport, completed a preprinted form entitled "Medical Opinion of Mental Ability to Do Work-Related Activities" on February 5, 2013. (Tr. 632-33). In response to questions on the form, Dr. Devenport checked boxes indicating that Baker has some mild and some moderate limitations in her various mental abilities to do work. He opined that Baker has marked limitations in her ability to complete a normal work day and work week doing unskilled work without interruptions from psychologically based symptoms. The ALJ afforded some weight to Dr. Devenport's opinions on this form, but rejected his opinion regarding marked limitations on the basis that it was inconsistent with Dr. Devenport's treatment notes, which showed that plaintiff was doing well with improved anxiety on the same date of February 5, 2013, and which showed very few problems on mental status examination during the course of her treatment. The ALJ adopted Dr. Devenport's opinion that Baker has only mild limitations in performing

18

routine, simple work. (Tr. 20). Plaintiff argues that the ALJ should have adopted Dr. Devenport's opinion that she has marked limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms.

Plaintiff also argues that the ALJ did not specifically reject and therefore must be deemed to have adopted Dr. Devenport's opinions that Baker has moderate limitations in her ability to maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of rest periods, and deal with normal work stress in an unskilled job, and his opinions that plaintiff's mental impairments would probably cause her to miss more than four days per month of work and be off task 25 to 50 percent of the time. Baker contends that the ALJ failed to explain adequately why she did not adopt these limitations.

Baker makes the same argument with respect to the opinions of Lynette Causey, Ph.D., the psychological consultant who reviewed the medical records on March 15, 2012, and opined that plaintiff had moderate difficulty in maintaining social functioning, concentration, persistence and pace (Tr. 88), and was moderately limited in her ability to maintain attention and concentration for extended periods of time. (Tr. 90-91). The ALJ accorded some weight to Dr. Causey's residual functional capacity assessment. However, the ALJ stated that she imposed more limitations than Dr. Causey, based on the ALJ's review of more recent medical records than Dr. Causey had seen. (Tr. 20).

19

Plaintiff also makes the same argument regarding the opinions of Donna M,
Mancuso, M.D., a psychiatrist who performed a consultative examination on January 13,
2014. (Tr. 636-41).  The ALJ noted that Dr. Mancuso's examination was the most recent
in the record.  Dr. Mancuso opined that plaintiff has no problems in social function,
memory or concentration, but has moderate limitations in her ability to tolerate
stress/pressure in a work setting.  The ALJ assigned significant weight to Dr. Mancuso's
opinions and thus determined that Baker has the "residual functional capacity for simple,
routine work (less stress) [and] no production quotas (no fast paced work[,] hence less
stress/pressure)." (Tr. 20-21).  Plaintiff contends that the ALJ did not specifically reject,
therefore must be deemed to have adopted, and failed to explain adequately why she did
not adopt Dr. Mancuso's additional opinion that Baker is likely to be mildly to
moderately impaired in her ability to sustain effort and persist at a normal pace over the
course of a 40-hour work week.  (Tr. 641).

The ALJ in this case stated that she considered the opinion evidence in accordance
with 20 C.F.R. § 404.1527.  She thoroughly reviewed the extremely voluminous medical
records (the entire record exceeds 1,000 pages).  She accepted Dr. Devenport's diagnoses
and opinions concerning plaintiff's symptoms to the extent they were supported by the
treatment records.  Similarly, the ALJ weighed, adopted and explained her reasons for
adopting Dr. Causey's and Dr. Mancuso's opinions.

20

Generally,

[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability.  A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. . . .

. . . . [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.  The treating physician's opinions are not conclusive.  The opinions may be assigned little or no weight when good cause is shown.  Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Newton, 209 F.3d at 455-56 (quotations and citations omitted).  The ALJ discussed

specifically why she gave only some weight to Dr. Devenport's opinions on the checklist.

She had good cause to discount Dr. Devenport's opinion that Baker is markedly limited

in her ability to complete a normal work day and work week without interruptions from

psychologically based symptoms.

First, appellate courts, including the Fifth Circuit, have often held that checklist

opinions are unworthy of credence when they are not adequately supported by or are

inconsistent with the medical records.  See Foster v. Astrue, 410 F. App'x 831, 833 (5th

Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . .

[W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory

nature, lack of explanatory notes, or supporting objective tests and examinations, [the

treating physician's] opinion is given little weight.'"); Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (ALJ provided legitimate reasons for rejecting doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the treatment notes); Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.").  In this case, Dr. Devenport provided no explanations of the limitations that he assessed on this checklist form.

Second, as the ALJ noted, the marked limitation that Dr. Devenport described was inconsistent with Baker's treatment records.  Baker was referred to a psychiatrist by her primary care physician, Pedro Romaguera, M.D., on February 14, 2012, and April 25, 2012, one month after her DIB application was initially denied.  (Tr. 598-99).  She did not present for evaluation and treatment by a mental health provider until July 31, 2012.

Psychologist Carlos B. Reinoso, Ph.D., performed a consultative examination of Baker on February 28, 2012.  Her mental status examination was within normal limits, except for her report of hearing music and seeing shadows or lights before going to bed at night.  However, Dr. Reinoso noted that it was unclear whether those experiences were related to plaintiff taking Ambien to sleep.  She did not report any clear manic symptoms and exhibited no depressive symptoms, other than crying, during the evaluation.  Dr. Reinoso diagnosed depressive disorder, not otherwise specified; post-traumatic stress disorder; and rule out bipolar disorder.  He opined that Baker had mild limitations in her activities of daily living with no limitations in her social functioning or concentration, should have no difficulty relating to co-workers or superiors, and could understand and carry out moderate instructions.  Dr. Reinoso stated that she may have difficulty in handling work pressures.  (Tr. 405-07).  The ALJ assigned no weight to this last statement because it was based solely on Baker's own report of symptoms, she was not then seeking mental health treatment, Dr. Reinoso did not explain why she would have such a limitation and there were no treatment records to support it.  (Tr. 19-20).  These reasons comply with 20 C.F.R. § 404.1527 and Social Security Ruling 96-8p and provide good cause for the ALJ's findings regarding Dr. Reinoso's evaluation.

Baker first sought mental health treatment for depression and anxiety at River Parishes Mental Health Clinic on July 31, 2012.  She was evaluated by a licensed clinical social worker, who assessed her impairment in functioning as moderate.  Plaintiff was

diagnosed with bipolar disorder, most recent episode depressed, moderate; and panic disorder with agoraphobia.[6]  (Tr. 587-92).

Baker saw Dr. Devenport for the first time on October 22, 2012.  His clinical summary indicated she had panic disorder, rule out post-traumatic stress disorder, psychosis not otherwise specified.  He noted that plaintiff had "a lot of depression, as well as anxiety and panic. . . .  She also reports hallucinations which may not truly be hallucinations.  She advocates some for bipolar disorder."  Dr. Devenport's principal diagnosis was bipolar disorder, most recent episode depressed, moderate, with a secondary diagnosis of panic disorder with agoraphobia.  (Tr. 623-24).

Baker returned to see Dr. Devenport on November 16, 2012.  At both this and her prior visit, he noted that the severity of plaintiff's symptoms of bipolar disorder and panic disorder was marked.  (Tr. 624, 627).  However, she reported to him on December 7, 2012, and February 5, 2013, that she was doing well when she complied with her medication regime.  On December 7, 2012, she was only in partial compliance.  Dr. Devenport noted on that date that plaintiff's symptoms were mild and she was globally much improved.  On February 5, 2013, he opined that her symptoms were moderate and minimally improved.  (Tr. 621-22, 628-29).

---

[6]Agoraphobia is "[a] mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or are avoided; often associated with panic attacks."  Stedmans Medical Dictionary on Westlaw as STEDMANS 18100.

On April 12, 2013, plaintiff reported inconsistent compliance with her prescribed medications.  Dr. Devenport noted that she was no longer having hallucinations and had no significant medication side effects.  Her mental status examination was within normal limits, except for a constricted affect and an anxious, depressed mood.  Dr. Devenport opined that her symptoms were of moderate severity, with minimal global improvement. (Tr. 956-57).

Baker told Dr. Devenport on September 24, 2013, that she was doing pretty well with partial adherence to her medication regimen.  Her mental status examination was within normal limits, except that her mood was anxious, irritable, dysphoric,[7] elated and depressed.  Dr. Devenport opined that her symptoms were moderately severe with no change in global improvement.  (Tr. 958-59).

Plaintiff last saw Dr. Devenport on November 19, 2013.  She reported that she was doing really well and taking all of her medications, which had helped tremendously with her mood and anxiety.  She had no hallucinations and no side effects.  Her mental status examination was within normal limits, except for limited concentration and an anxious

_____

[7]Dysphoria is "[a] mood of general dissatisfaction, restlessness, depression, and anxiety; a feeling of unpleasantness or discomfort."  Stedman's Medical Dictionary, on Westlaw at STEDMANS 273670.

and euthymic[8] mood.  Dr. Devenport noted that her symptom severity was mild and her global improvement was much improved.  (Tr. 960-61).

A claimant's failure to seek treatment or lack of need for strong medication are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount plaintiff's complaints of disabling pain or other limitations.  Clayborne v. Astrue, 260 F. App'x 735, 737 (2008); Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel,  205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)).  The ALJ appropriately considered Baker's lack of treatment by mental health professionals until July 31, 2012, her incomplete compliance with medications and the treatment records indicating that she improved with medication compliance as factors in discounting Dr. Devenport's assessment that she had a marked limitation in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms.

The record contains a second form "Medical Opinion of Mental Ability to Do Work-Related Activities" signed by Dr. Devenport.  This report is undated, but has an

---

[8]Euthymia is "1. Joyfulness; mental peace and tranquility.  2. Moderation of mood, not manic or depressed."  Stedmans Medical Dictionary on Westlaw at STEDMANS 307600 (Thomson Reuters 2014).

introductory paragraph stating, in underlined type:  "Please make sure that your opinions expressed herein are inclusive of all periods from February 6, 2013 through present." (Tr. 1019).  Because Dr. Devenport's other form "Medical Opinion of Mental Ability" was dated February 5, 2013, the court assumes that this second form was completed after that date.  Although the ALJ did not mention this opinion, and plaintiff does not discuss it in her memorandum in this court, it supports the ALJ's residual functional capacity findings.  Dr. Devenport indicates in his checked responses on this form that plaintiff has only mild to moderate limitations in all areas, except that she has marked limitation in her ability to interact appropriately with the general public.  (Tr. 1019-20).  Consistent with that limitation, the ALJ held that Baker is capable of simple, routine work with no public interactions and no production-type quotas.

On January 3, 2014, Dr. Mancuso performed a consultative examination of Baker and reviewed Dr. Devenport's February 5, 2013 form Medical Opinion of Mental Ability to Do Work-Related Activities.  On mental status examination, Dr. Mancuso found that Baker's behavior, affect and thought processes were within normal limits, except that plaintiff reported her mood as irritable and that she heard voices and music and saw shadows at night.  Dr. Mancuso diagnosed bipolar I most recent episode depressed, with mood-congruent psychotic features, in partial remission; alcohol use disorder, moderate to severe, in reported remission; history of agoraphobia and panic disorder; and cannabis use disorder, mild, in reported remission.  Dr. Mancuso opined that plaintiff's abilities

to relate to others would be fair to good; to maintain attention and perform simple repetitive tasks for two-hour blocks of time would be fair; to sustain effort and persist at a normal pace over the course of a 40-hour work week would be mildly to moderately impaired by mood disturbance; to understand, remember and follow simple commands would be within normal limits; and to tolerate the stress/pressure of day to day work activity would be moderately impaired by mood disturbance.  (Tr. 636-41).

The ALJ assigned significant weight to Dr. Mancuso's opinions, which are based on the most recent examination of plaintiff, and determined that Baker has the residual functional capacity for simple, routine work and no production quotas.  This finding is also consistent with Dr. Devenport's treatment notes from November 19, 2013, and his second, undated Medical Opinion of Mental Ability to Do Work-Related Activities.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  This court may not reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. <u>Halterman ex rel. Halterman v. Colvin</u>, 544 F. App'x 358, 360 (5th Cir. 2013) (citing <u>Newton</u>, 209 F.3d at 452); <u>Stringer</u>, 465 F. App'x at 364.

The medical records described above are substantial evidence supporting the ALJ's decision to afford no weight to Dr. Devenport's opinion that plaintiff has marked limitations in her ability to complete a normal work day and work week without

28

interruptions from psychologically based symptoms.  As she is obligated to do, the ALJ in the instant case weighed conflicting medical evidence; resolved the conflict in favor of the opinions of Drs. Causey, Reinoso and Mancuso, and to some extent, Dr. Devenport, that were supported by the mental health treatment records; and adequately explained her reasons.  Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)); see also Kirksey v. Shalala, 21 F.3d 1109 (5th Cir. 1994) (internal discrepancies in medical records are within the ALJ's province to resolve).  "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Newton, 209 F.3d at 455 (quotation omitted).  "[T]he Act empowers the ALJ to analyze the physicians' testimony.  Substantial evidence supports the ALJ's decision to disregard the physicians' conclusions.  That basis is enough to survive our review."  Greenspan, 38 F.3d at 237.

Finally, Baker's reliance on Myers v. Apfel, 328 F.3d 617 (5th Cir. 2001), is misplaced.  The Fifth Circuit in Myers reversed and remanded because, unlike the ALJ in the instant case, that ALJ had failed to consider all of the evidence from plaintiff's treating doctors and had failed to resolve inconsistencies in the medical evidence.  Myers does not require an ALJ to state affirmatively in all cases that plaintiff is capable of performing work on a regular and sustained basis.  The Fifth Circuit has expressly rejected any such duty.  Castillo v. Barnhart, 151 F. App'x 334, 335-36 (5th Cir. 2005)

(citing <u>Perez</u>, 415 F.3d at 465 <u>Frank v. Barnhart</u>, 326 F.3d 618, 619 (5th Cir. 2003)). "Usually, the issue of whether a claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." <u>Id.</u> at 336. The ALJ in the instant case addressed Baker's capability to perform the demands of regular work by assessing her with a residual functional capacity to do light work with some restrictions.

"Conflicts of evidence are for the Commissioner, not the courts, to resolve.'" <u>Byrd v. Comm'r of Social Sec.</u>, 368 F. App'x 542, 543 (5th Cir. 2010) (quoting <u>Perez</u>, 415 F.3d at 461). Although "[o]ne may make reasonable arguments that the evidence should have been assessed differently in the first instance, . . . those arguments are beyond the limited role of the court in the review process." <u>Lee o/b/o R.L. v. Comm'r, Soc. Sec. Admin.</u>, No. 11-cv-0910, 2013 WL 639060, at *4 (W.D. La. Jan. 29, 2013), <u>report & recommendation adopted</u>, 2013 WL 639058 (W.D. La. Feb. 21, 2013).

Accordingly, plaintiff's assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ applied the appropriate legal standards in weighing the opinions of plaintiff's treating psychiatrist and other medical sources. Substantial evidence supports the ALJ's residual functional capacity findings.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this ___17th___ day of August, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

31